### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    **v.**

**JOSHUA MCDANIEL,**

    **Defendant.**

**Case No. 15-CR-20050-01-JAR**

### MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Joshua McDaniel's Objections Number One and Two to the Presentence Investigation Report ("PSR") (Doc. 29).[1] Defendant first objects to Paragraph 44 of the PSR, which classifies his prior conviction for aggravated assault with a deadly weapon as a "crime of violence" under the United States Sentencing Guidelines ("USSG"). Second, Defendant objects to Paragraph 40, which classifies his prior conviction for possession of marijuana with intent to sell as a "controlled substance offense." Defendant submitted a sentencing memorandum (Doc. 30) in support of his Objection Number One, and the Government filed a sentencing memorandum (Doc. 37) in response, which addressed both objections. The Court held a sentencing hearing on June 3, 2016, at which time the Court took this matter under advisement and continued Defendant's sentencing hearing. The matter is fully briefed and the Court is prepared to rule. For the reasons stated below, the Court overrules Defendant's Objections Number One and Two.

---

[1] Defendant filed four additional objections to the PSR. Because these objections do not affect the offense level calculations under the United States Sentencing Guidelines, the Court does not rule on these objections. The Court, however, notes these additional objections for the Record.

**I.   Background**

Defendant pleaded guilty on January 4, 2016 to knowingly and unlawfully possessing, as a felon, a firearm that had been transported in interstate commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[2] Before Defendant's sentencing hearing, the United States Probation Office prepared a PSR, in which it calculated Defendant's base offense level as 26 pursuant to USSG § 2K2.1.[3] Section 2K2.1(a) describes the applicable base offense levels for offenses under § 922(g)(1), and provides a base level of 26 when the offense involves the use of a semiautomatic firearm that is capable of accepting a large capacity magazine and the defendant commits the offense subsequent to two convictions of either a crime of violence or a controlled substance offense.[4]

The PSR described Defendant's criminal history, including two felony convictions relevant to this matter. First, Defendant was sentenced in 2009 in Wyandotte County District Court in Kansas for a conviction for possession of marijuana with intent to sell.[5] The Information in that case alleged that "o[n] or about February 24, 2009, Joshua L. McDaniel did unlawfully, willfully and feloniously possess with the intent to sell a quantity of Marijuana, in violation of K.S.A. § 65-4163(a)."[6] Second, Defendant was sentenced in 2012 in Wyandotte County District Court in Kansas for convictions on two counts of aggravated assault with a deadly weapon. The Amended Information in that case alleged that on or about December 3, 2010, the defendant "did unlawfully and intentionally place [two persons], to wit: [Solomon Young and Jerome Young], in a reasonable apprehension of immediate bodily harm, committed

---

[2] Doc. 21.
[3] Doc. 29 at 6.
[4] United States Sentencing Guidelines § 2K2.1(a)(1).
[5] Doc. 29 at 9.
[6] *Id.*

with a deadly weapon, in violation of K.S.A. § 21-3410(a)."[7] The PSR classified the marijuana offense as a controlled substance offense and the aggravated assault offense as a crime of violence, and therefore calculated Defendant's base offense level as 26. Defendant argues that the previous convictions were not for either a "controlled substance offense" or a "crime of violence," and therefore his base offense level should be 20.

## II. Discussion

### A. Kansas Aggravated Assault

Defendant argues that his previous conviction for aggravated assault in Kansas was not for a crime of violence. At the time of the filing of the PSR, USSG § 4B1.2(a) defined the term "crime of violence" for purposes of § 2K2.1(a) as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.[8]

Application Note 1 in the Commentary to § 4B1.2 added the following:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.[9]

In *Johnson v. United States*, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA"), which provides that "crimes of violence" include crimes that

---

[7]*Id.* at 11.

[8]The United States Sentencing Commission recently amended Guideline § 4B1.2, effective August 1, 2016, making changes to the definition of "crime of violence." These changes included adding "aggravated assault" to the list of enumerated offenses in the text of § 4B1.2(a)(2). *See* United States Sentencing Guidelines § 4B1.2(a); *Beckworth v. United States*, No. 4:12CR88, 2016 WL 4203510, at *2 n.4 (N.D. Miss. Aug. 9, 2016).

[9]*United States v. Armijo*, 651 F.3d 1226, 1230 (10th Cir. 2011) (citing previous version of Application Note 1 to USSG § 4B1.2).

3

"otherwise involve[] conduct that presents a serious potential risk of physical injury to another," is unconstitutionally vague.[10] Relying on *Johnson*, the Tenth Circuit held in *United States v. Madrid* that the "virtually identical" residual clause in § 4B1.2(a)(2) is void for vagueness.[11] Thus, in the wake of *Johnson* and *Madrid*, a defendant's prior conviction will be considered a crime of violence under § 4B1.2 only if the crime of conviction (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (2) meets the generic definition of one of the crimes enumerated in § 4B1.2(a)(2) or the Commentary to § 4B1.2.[12] The Supreme Court has defined "physical force" as "*violent* force—*i.e.*, force capable of causing physical pain or injury to another person."[13]

In considering whether a past conviction is for a crime of violence, a court applies one of two approaches. First, a court may employ the "categorical approach," under which it looks "not to the particular facts of the prior conviction but to the terms of the underlying statute."[14] The court then compares the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime—*i.e.*, the offense as commonly understood, or determines whether the statute incorporates "the use, attempted use, or threatened use of physical

---

[10] 135 S. Ct. 2551, 2557–63 (2015).

[11] 805 F.3d 1204, 1211 (10th Cir. 2015).  The United States Sentencing Commission removed the residual clause from § 4B1.2(a) as part of the August 1, 2016 amendments.  *See* United States Sentencing Guidelines § 4B1.2(a).

[12] *United States v. Mitchell*, -- F. App'x --, No. 15-7076, 2016 WL 3569764, at *3 (10th Cir. June 29, 2016) (explaining that after *Johnson*, offense must fit within the "elements clause" or the "enumerated offenses" clause to constitute a crime of violence under § 4B1.2); *see United States v. McConnell*, 605 F.3d 822, 824 (10th Cir. 2010) (quoting *United States v. Charles*, 576 F.3d 1060, 1066 (10th Cir. 2009)) ("Commentary to the Guidelines 'is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'"); *United States v. Hinton*, No. 4:15-CR-26-FL, 2016 WL 632447, at *2 (E.D.N.C. Feb. 17, 2016) (quoting *United States v. Mobley*, 687 F.3d 625, 629 (4th Cir. 2012)) ("The crimes specified in Application Note 1 of the Commentary to § 4B1.2 serve as additional enumerated offenses, or 'example crimes'").

[13] *Johnson v. United States*, 559 U.S. 133, 134 (2010) (emphasis in original).

[14] *United States v. Venzor-Granillo*, 668 F.3d 1224, 1228 (10th Cir. 2012) (quoting *United States v. Martinez-Hernandez*, 422 F.3d 1084, 1086 (10th Cir. 2005)); *United States v. Zuniga-Soto*, 527 F.3d 1110, 1118 (10th Cir. 2008) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)).

4

...

force" as an element.[15]  If the relevant statute substantially corresponds to the generic offense, or if it incorporates physical force as an element, the conviction may be used for enhancement purposes.[16]  Second, Courts use the "modified categorical approach" when a statute of conviction is divisible, meaning that it contains multiple definitions of an offense, some of which do not qualify as crimes of violence.[17]  The modified categorical approach allows the court to examine certain judicial records, such as the charging document, plea agreement, plea colloquy, or jury instructions, to determine which alternative offense of a divisible statute formed the basis of the defendant's prior conviction.[18]

Defendant was previously convicted of aggravated assault under K.S.A. § 21-3410, which defined the offense as follows:

> Aggravated assault is assault, as described in K.S.A. 21-3408 and amendments thereto, committed:
> (a) With a deadly weapon;
> (b) While disguised in any manner designed to conceal identity; or
> (c) With intent to commit any felony.[19]

Assault was defined as "intentionally placing another person in reasonable apprehension of immediate bodily harm."[20]  As the statute makes clear, a person can commit aggravated assault by committing assault in one of three ways.  The statute thus provides alternative definitions of aggravated assault, some of which may constitute crimes of violence and some of which may not.  Accordingly, the Court must employ the modified categorical approach to determine which of these alternative offenses formed the basis of Defendant's prior conviction.  An examination

---

[15]*Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013); *Zuniga-Soto*, 527 F.3d at 1118–19.

[16]*Venzor-Granillo*, 668 F.3d at 1228 (quoting *United States v. Barney*, 955 F.2d 635, 638 (10th Cir. 1992)).

[17]*Descamps*, 133 S. Ct. at 2281; *United States v. Hood*, 774 F.3d 638, 645 (10th Cir. 2014), *cert. denied*, 135 S. Ct. 2370, 192 L. Ed. 2d 159 (2015); *Zuniga-Soto*, 527 F.3d at 1117.

[18]*Descamps*, 133 S. Ct. at 2281; *Venzor-Granillo*, 668 F.3d at 1228 (citations omitted).

[19]K.S.A. § 21-3410 (2010) (currently at K.S.A. § 21-5412).

[20]K.S.A. § 21-3408 (2010) (currently at K.S.A. § 21-5412).

5

of the Amended Information reveals that Defendant was convicted of aggravated assault "with a deadly weapon" under § 21-3410(a).[21]

Having determined that Defendant was convicted of aggravated assault with a deadly weapon under § 21-3410(a), the Court must determine whether that offense constitutes a "crime of violence" as defined by USSG § 4B1.2(a). The Government argues that § 21-3410(a) is a crime of violence because it incorporates "the use, attempted use, or threatened use of physical force" as an element. Defendant contends that the offense does not require "physical force," but instead requires that a person only cause reasonable apprehension of "bodily harm."

Defendant cites *United States v. Perez-Vargas*,[22] in which the Tenth Circuit addressed whether a conviction under Colorado's third-degree assault statute was a crime of violence. The statute provided that third-degree assault occurs when a defendant "knowingly or recklessly causes bodily injury to another person or with criminal negligence he causes bodily injury to another person by means of a deadly weapon."[23] The court recited a number of cases in which the Tenth Circuit and other courts had previously found that statutes that focused on bodily harm or injury, rather than physical force, did not constitute crimes of violence.[24] The court emphasized that the Colorado statute allowed for "other possibilities" in which a defendant could commit third-degree assault without using or threatening physical force, including "recklessly shooting a gun in the air to celebrate, intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals. One can imagine a number

---

[21]Doc. 29 at 11.

[22]414 F.3d 1282 (10th Cir. 2005).

[23]*Id.* at 1285.

[24]*Id.* at 1286–87 (citing *United States v. Lucio-Lucio*, 347 F.3d 1202, 1206 (10th Cir. 2003); *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003); *United States v. Gracia-Cantu*, 302 F.3d 308 (5th Cir. 2002)).

of other hypotheticals."[25]  Accordingly, the court found that the third-degree assault statute was not a crime of violence because it did not incorporate the use or threatened use of physical force as an element.[26]

Defendant urges the application of the holding in *Perez-Vargas* to this case, and goes so far as to suggest that "*Perez-Vargas* resolves our case."[27]  Defendant argues that like the third-degree assault statute in *Perez-Vargas*, the aggravated assault statute here criminalizes the use of a deadly weapon and the causation or threat of bodily harm, but does not necessarily include the use or threatened use of physical force.

In *United States v. Ramon Silva*,[28] the Tenth Circuit addressed whether a conviction under New Mexico's aggravated assault statute constituted a "violent felony" within the meaning of the ACCA.  The New Mexico statute defined assault as "any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery."[29]  The statute in turn defined aggravated assault as "unlawfully assaulting or striking another with a deadly weapon."[30]  Like here, the defendant argued that the statute did not have as an element the use, attempted use, or threatened use of physical force.[31]  The court rejected that argument, and held that the aggravated assault with a deadly weapon statute incorporated physical force as an element.[32]  The court explained:

---

[25]*Id.* at 1286.

[26]*Id.* at 1287.

[27]Doc. 30 at 15.

[28]608 F.3d 663 (10th Cir. 2010).

[29]*Id.* at 669 (citing N.M. Stat. § 30-3-1).

[30]*Id.*

[31]*Id.*

[32]*Id.* at 670.

> Threatening or engaging in menacing conduct toward a victim, with a weapon capable of producing death or great bodily harm, threatens the use of "*violent* force" because by committing such an act, the aggressor communicates to his victim that he will potentially use "*violent* force" against the victim in the near-future.  Additionally, "apprehension causing" aggravated assault threatens the use of "*violent* force" because the proscribed conduct always has the potential to lead to "*violent* force."[33]

Drawing on this rationale, Chief Judge Marten of this District recently held in *United States v. Nicholas*[34] that a conviction under Montana's aggravated assault statute constitutes a "violent felony" within the meaning of the ACCA.[35]  The statute defined "aggravated assault—felony assault" as follows:

> (2) A person commits the offense of felony assault if he purposely or knowingly causes:
>     (a) bodily injury to another with a weapon;
>     (b) reasonable apprehension of serious bodily injury in another by use of a weapon; or
>     (c) bodily injury to a peace officer or a person who is responsible for the care or custody of a prisoner.[36]

Judge Marten explained that because the statute required the use of a weapon resulting in "reasonable apprehension of serious bodily harm," the statute "proscribe[d] conduct involving 'force capable of causing physical pain or injury to another person.'"[37]

The Court finds that Kansas aggravated assault incorporates as an element the use, attempted use, or threatened use of physical force.  Like the statutes at issue in *Ramon Silva* and *Nicholas*, here aggravated assault requires a defendant to *knowingly* cause "reasonable apprehension of immediate bodily harm" with a deadly weapon.[38]  As the court explained in

---

[33]*Id.* at 670–71 (emphasis in original).

[34]No. 14-10005-01-JTM, 2016 WL 300897 (D. Kan. Jan. 25, 2016).

[35]*Id.* at *2.

[36]*Id.* (citing M.C.A. 45-5-202(2)(a)).

[37]*Id.* (citing *Johnson v. United States*, 559 U.S. 133, 140 (2010); *Ramon Silva*, 608 F.3d at 670–71).

[38]K.S.A. § 21-3410(a) (2010) (currently at K.S.A. § 21-5412).

*Ramon Silva*, "even assuming 'one could knowingly discharge a firearm at or in the direction of an individual without actually intending to injure him,' the crime 'still involve[s] the purposeful *threatened* use of physical force against the person of another.'"[39]  Unlike the statute at issue in *Perez-Vargas*, here the statute does not allow for an aggravated assault conviction on the basis of reckless or criminally negligent conduct.[40]  The Kansas aggravated assault with a deadly weapon statute does not allow for "other possibilities" that cause bodily harm without the use of physical force, such as the reckless discharge of a gun, the use of poison, or the placement of a barrier in the road.  Rather, to be convicted under the statute, a defendant must knowingly cause reasonable apprehension of bodily harm with a deadly weapon.  Although the statute refers to "reasonable apprehension of bodily harm," the statute necessitates the use or threatened use of physical force to create the apprehension.

Defendant argues that, based on the definition of "deadly weapon" under the statute, § 21-3410(a) does not have as an element the use or threatened use of physical force.  As Defendant correctly argues, Kansas "has adopted a subjective analysis for determining whether an assault was committed with a deadly weapon."[41]  Under this approach, the brandishing of a loaded and operational firearm certainly constitutes the use of a deadly weapon.  But an otherwise harmless object "can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon."[42]  A deadly weapon can also be "[a]n instrument which, from the manner in which it is

---

[39]*Ramon Silva*, 608 F.3d at 674 (citing *United States v. Hernandez*, 568 F.3d 827, 832 (6th Cir. 2009)) (emphasis in original).

[40]*See Perez-Vargas*, 414 F.3d at 1285; *see also Nicholas*, 2016 WL 300897 at *2 (explaining that *Perez-Vargas* is "distinguishable" in part because the statute in that case "was very broad, applying to an action causing bodily injury to another, even if it was done 'recklessly' or 'with criminal negligence'").

[41]*State v. Graham*, 6 P.3d 928, 931 (Kan. Ct. App. 2000).

[42]*State v. Davis*, 605 P.2d 572, 575 (Kan. 1980).

9

used, is calculated or likely to produce death or serious bodily injury."[43] Accordingly, Kansas courts have held that the following conduct involved the use of deadly weapons: (1) a defendant's use of a black toy pistol in an armed robbery, where the defendant "intended the victims to believe the gun was a dangerous or deadly weapon, and the victims reasonably believed it to be such a weapon";[44] (2) the swinging of a "solid," three-feet-long walking stick used to assault a victim;[45] and (3) a defendant's assault by dousing a victim in gasoline, where the defendant intended to communicate the ability to inflict bodily harm, and the victim reasonably believed that the gasoline could cause eye damage, skin cancer, and other types of bodily harm.[46] The Kansas Court of Appeals has explained that "even a finger in one's coat pocket could be considered a dangerous weapon under the subjective test."[47]

Defendant contends that the Tenth Circuit requires the use of "a weapon capable of producing death or great bodily harm" to constitute the use of physical force.[48] By contrast, the Kansas aggravated assault statute proscribes a broader range of conduct by referring to the term "deadly weapon" in a way that includes instruments that are not designed to cause great bodily harm.[49] Although a "deadly weapon" as defined under Kansas law may in some circumstances

---

[43]*State v. Poppelreiter*, No. 110,843, 2015 WL 2131564 at *2 (Table) (May 1, 2015) (quoting *State v. Colbert*, 769 P.2d 1168 (Kan. 1989)).

[44]*State v. Childers*, 830 P.2d 50 (Kan. Ct. App. 1991).

[45]*Poppelreiter*, 2015 WL 21315464.

[46]*Graham*, 6 P.3d at 931.

[47]*Childers*, 830 P.2d at 56–57.

[48]*See Ramon Silva*, 608 F.3d at 674 (explaining that under New Mexico aggravated assault statute, "the crime requires proof that a defendant purposefully threatened or engaged in menacing conduct *toward* a victim, with a weapon capable of producing death or great bodily harm") (emphasis in original).

[49]Even under the Kansas subjective test, many instruments found to be deadly weapons are in fact capable of causing bodily harm. For example, the court in *Poppelreiter* referred to evidence in the record that the walking stick at issue could have killed the victim if it had hit him in the head. *Poppelreiter*, 2015 WL 21315464. Additionally, the Court in *Graham* recognized that even in jurisdictions that apply an objective test, gasoline is typically found to be a dangerous weapon because it can cause death or great bodily harm when combined with fire. *Graham*, 6 P.3d at 931–32.

be incapable of producing great bodily harm, the Court is not convinced that this removes the element of physical force from the aggravated assault statute. Under the subjective test in Kansas, an otherwise benign instrument may constitute a "deadly weapon" where it is presented or concealed in such a way that it may reasonably appear to be a weapon capable of producing death or great bodily harm.[50] A toy gun, a defective gun, or a finger in a pocket may be a deadly weapon if the defendant presents the item as an actual firearm, and the victim reasonably fears that it is a real gun. The subjective test, however, does not allow for a benign object to qualify as a deadly weapon where it is presented as a benign object. Stated otherwise, a toy gun is not a deadly weapon if the defendant brandishes the toy gun and explains to the victim that it is just a toy. The Court is not aware of any authority in Kansas that allows for this result, and Defendant has pointed the Court to none.

Thus, the definition of "deadly weapon" in Kansas does not remove the element of physical force from the aggravated assault with a deadly weapon statute. To commit aggravated assault with a deadly weapon in Kansas, a defendant must threaten the use of physical force such that a reasonable person would apprehend bodily harm. While a defendant need not use actual physical force, a defendant must *threaten* to use physical force to commit the offense. Because § 21-3410(a) has as an element the threatened use of physical force, the Court finds that Defendant's previous conviction under that statute constitutes a crime of violence.[51]

---

[50] *Colbert*, 769 P.2d at 1172 (quoting *State v. Davis*, 605 P.2d 572 (Kan. 1980)); *Graham*, 6 P.3d at 931–32.

[51] Because the Court finds that § 21-3410(a) incorporates physical force as an element of the offense, the Court does not address whether the statute meets the generic elements of aggravated assault, as enumerated in the commentary to USSG § 4B1.2. The Court, however, notes that Judge Rogers of this District previously held that this precise statute meets the generic elements of aggravated assault, thereby qualifying as a "crime of violence." *United States v. Olivera-Flores*, No. 11-40069-01-RDR, 2012 WL 481846 (D. Kan. Feb. 14, 2012).

### B.     Possession of Marijuana with Intent to Sell

Defendant also objects to the characterization of his previous conviction under K.S.A. § 65-4163(a) for possession of marijuana with intent to sell as a "controlled substance offense." USSG § 4B1.2 defines the term "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits . . . the possession of a controlled substance . . . with intent to manufacture, import, export, distribute or dispense." At the time of Defendant's 2009 arrest for the offense, § 65-4163(a) stated:

> Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to sell, offer for sale or have in such person's possession with the intent to sell, deliver or distribute; cultivate; prescribe; administer; deliver; distribute; or dispense [a listed controlled substance].[52]

Defendant argues that the statute is divisible because the words and phrases after the word "intent" constitute alternative definitions of the offense, some of which do not constitute controlled substance offenses. Defendant contends that although § 4B1.2 refers to possession with intent to "distribute," it does not refer to possession with intent to "sell." Thus, he argues that a conviction for possession with intent to "sell" under K.S.A. § 65-4163(a) does not qualify as a "controlled substance offense" under the Guidelines. Accordingly, Defendant asks the Court to apply the modified categorical approach to determine under which alternative of § 65-4163(a) he was convicted.

Because Defendant argues that possession with intent to "sell" is a separate offense from possession with intent to "distribute," the Court applies the modified categorical approach to determine under which alternative Defendant was convicted.[53] Review of the Journal Entry of

---

[52] K.S.A. § 65-4163(a) (2008) (currently at K.S.A. § 21-5705).

[53] The Court's application of the modified categorical approach is not an endorsement of Defendant's argument that the words "sell" and "distribute" in fact create alternative offenses under § 65-4163(a). Rather, the Court applies the modified categorical approach to determine whether an analysis of this issue is even necessary.

Judgment in Defendant's 2009 case reveals that he was convicted of possession of marijuana with intent to sell.[54]  Thus, the Court must determine whether this constitutes a "controlled substance offense."

Defendant cites the Kansas Court of Appeals case *State v. Waldrup*,[55] which addressed whether a jury instruction provided in a sale of cocaine case created alternative means of committing the offense.  The instruction stated in part: "A sale under the Uniform Controlled Substances Act has a broader meaning than 'sale' usually has.  Sale under the Act means selling for money, and also includes barter, exchange, or gift, or an offer to do any of these things."[56]  The court ultimately held that this definition did not create alternative means of committing the offense.[57]  Defendant also points to *United States v. Savage*,[58] a case in which the Second Circuit held that a similarly broad definition of the word "sale" in a Connecticut statute meant that a defendant's conviction for sale of drugs was not a controlled substance offense.[59]  The court explained that the statute, which criminalized "a mere offer to sell, absent possession," allowed for the potential for fraudulent offers and therefore did not constitute a "controlled substance offense" under the Guidelines because a person did not need to "have the *intent* to distribute or sell the item."[60]

---

Indeed, if Defendant was convicted under § 65-4163(a) of possession with intent to "distribute," this clearly constitutes a "controlled substance offense."

[54] Doc. 30-5 at 1.

[55] 263 P.3d 867 (Kan. Ct. App. 2011).

[56] *Id.* at 876.

[57] *Id.*

[58] 542 F.3d 959 (2d Cir. 2008).

[59] *Id.* at 965–66.

[60] *Id.* (emphasis in original).

Unlike the statute at issue in *Savage*, here § 65-4163(a) requires both possession and intent to sell, so the statute does not allow for the potential for fraudulent offers.[61] Thus, even under the broad definition of "sale," the offense constitutes a "controlled substance offense."[62] Also unlike the Connecticut statutes at issue in *Savage*, Kansas statutes do not contain a definition of the word "sale."[63] Rather, the "broad" definition for the term "sale" that the district court used in *Waldrup* "was based on a statutory definition that was part of a repealed statute and was subsequently approved and adopted by our Supreme Court."[64] Kansas statutes, however, define the term "distribute" in a way that incorporates the term "sale."[65] Possession with intent to "sell" necessarily involves intent to "distribute" because a person must have possession of the controlled substance and intent to sell it. Thus, a conviction for possession with intent to "sell" under § 65-4163(a) constitutes a "controlled substance offense" under the Guidelines. The Court overrules Defendant's Objection Number Two.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Joshua McDaniel's Objections Number One and Two to the Presentence Investigation Report (Doc. 29) are **overruled**. The Court sets a sentencing hearing for December 12, 2016, at 1:30 p.m.

**IT IS SO ORDERED.**

Dated: <u>September 26, 2016</u>

                            S/ Julie A. Robinson
                            JULIE A. ROBINSON
                            UNITED STATES DISTRICT JUDGE

---

[61] *See United States v. Evans*, 699 F.3d 858, 866–67 (6th Cir. 2012) (holding that Ohio statute that criminalized offering to sell controlled substances did not allow for fraudulent offers because conviction required intent to sell, and thus conviction under the statute was a "controlled substance offense").

[62] *See id.*

[63] *Waldrup*, 263 P.3d at 878 (explaining that in Kansas, there has been "no codified definition of the term 'sale'" since amendment to the Uniform Controlled Substances Act).

[64] *Id.*

[65] K.S.A. 2010 Supp. 21-36a01(d); *Waldrup*, 263 P.3d at 878.